# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

LITSA R. BRYAN,

        Plaintiff,

   v.                          Civil Action 2:18-cv-554
                               Judge James L. Graham
                               Magistrate Judge Jolson

COMMISIONER OF
SOCIAL SECURITY,

        Defendant.

## REPORT AND RECOMMENDATION

Plaintiff, Litsa R. Bryan, brings this action under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI"). For the reasons set forth below, it is **RECOMMENDED** that Plaintiff's Statement of Errors (Doc. 11) be **OVERRULED** and that judgment be entered in favor of Defendant.

## I. BACKGROUND

Plaintiff filed her application for SSI on November 3, 2014, alleging that she was disabled beginning September 1, 2014. (Doc. 7, Tr. 540). After her application was denied initially and on reconsideration, the Administrative Law Judge (the "ALJ") held a hearing on March 2, 2017. (Tr. 418–54). On June 1, 2017, the ALJ issued a decision denying Plaintiff's application for benefits. (Tr. 399–412). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 3–6).

Plaintiff filed the instant case seeking a review of the Commissioner's decision on June 6, 2018 (Doc. 1), and the Commissioner filed the administrative record on August 27, 2018 (Doc. 7).

Plaintiff filed her Statement of Errors (Doc. 11), Defendant filed an Opposition (Doc. 12), and Plaintiff filed a Reply (Doc. 13). Thus, this matter is ripe for consideration.

### A. Relevant Hearing Testimony

Plaintiff's statement of errors concerns her mental health, and as such, the Court examines the hearing testimony pertaining to the same.

At the time of the hearing, Plaintiff was 38-years-old. (Tr. 422). Plaintiff lives with two of her children, ages 15 and 19. (Tr. 424). Plaintiff also has a son with Asperger's Syndrome, who lives with his father. (Tr. 426). Because of a learning disability, Plaintiff attended special education classes in high school. (*Id*.). Plaintiff had a "bout of depression" and tried to commit suicide, though it is not clear from the testimony when this occurred. (Tr. 427). As a result, Plaintiff temporarily lost custody of all three of her children. (*Id*.). Plaintiff elaborated on her mental health symptoms:

> Q: Okay. So tell me about your mental health. It sounds like from what you've said already that there was a period where you are more depressed but that maybe you're a little more stable now but maybe just to go over kind of the history - -
>
> A: Sure.
>
> Q: - - of that, because I'm looking at your file from 2004 to the present.
>
> A. Right. I don't know the exact [time] when everything was diagnosed. I was seeing a physician. I had gotten depressed from a relationship that ended badly and I tried to commit suicide. So, the hospital sent me to the psyche floor to get treatment and the doctor diagnosed me as bipolar, depression, manic episodes. Can't remember everything. OCD and he started me on like a ritual of like three different drugs and they were very high dosage and I couldn't sleep with them, they were keeping me awake, so when I would go back in and I would say well, I'm having trouble sleeping. They're making me sick. I'm not feeling well, he would give me Ambien. Well he gave me the ambien which then in turn gave me the side effect of seeing a woman, riding my daughter's bike, trying to catch my house on fire, books in the oven and I told him that this is - - I've never had this before. Like this is not normal and he goes it's fine, let's just up your dosage and I was like no, we're good at the dosage we're at and I said I think I'll find another doctor. I feel like I'm getting railroaded here and so I found - - Six County, well they said the same thing, that I had everything that he had said and they wanted to keep me on the same medications and I didn't agree with it because I felt the medications were

too strong for who I am, as short as I am and stuff and so when I found Dr. I—kes [sic], he said you don't have any of those because I told him like, you know I was nauseated all the time. I wouldn't eat. I was - - I just felt out of it like even if I slept 14 hours I still couldn't function in the real world without feeling completely drowsy and just overly medicated and that's when he said that I had PTSD because we talked about my history as a child and my anxiety and things like that and he put me on Celexa and we started very, very slowly and we worked up to the milligram I'm on now and it's done very, very well.

Q. Okay. So no more hallucinations?

A. No.

Q. Did he tell you that he thought that the hallucinations were side effects of - -

A. Yes.

Q. - - your medications

A. Yes.

Q. Okay. So at this point do you think your mental condition would have no impact on your ability to go back to work or do you think it still would have an impact?

A. My anxiety would have a lot of impact on it because I'm not a big person when it comes to - - like people. I don't - - I'm not good with it. I try to exclude myself from a group of people because I get super nervous. I think everybody's staring at me and things like that. Even when I go to soccer practices with - - when my daughter played, I would never sit with the crowd. I always either sat in my car with my mom or we brought lawn chairs and I had to sit away. I can't be - - it makes me too nervous.

(Tr. 438–440).

In addition to Plaintiff, a vocational expert ("VE") testified at the hearing. The VE testified that Plaintiff could perform the light, unskilled jobs of machine tender feeder and assembler. (Tr. 449–50).

### B. Relevant Medical Background

As noted, Plaintiff's statement of errors concerns her mental health, and as such, the Court examines the medical evidence pertaining to the same.

The ALJ usefully summarized the mental health medical evidence of record.

3

> In addition to the claimant's physical impairments, the medical record also shows that the claimant has severe mental impairments. Specifically, the medical record shows that the claimant was psychiatrically hospitalized from May 5 through May 8, 2014 due to reported suicidal ideation and auditory hallucinations. The claimant was diagnosed with a bipolar disorder (mixed, with psychotic features) (Exhibit 15F). At the hearing, the claimant explained that these hallucinations were medication-induced and she denied any psychosis-based mental disorder.
>
> Due to her reported hallucinations, the claimant was evaluated at Six County in May 2014. The claimant endorsed depression, anxiety, mood swings, aggressiveness, and agitation. (Exhibit 12F). However, during an appointment in June 2014, the claimant had a normal mood, affect, speech, behavior, judgment, thought content, cognition, and memory. She was described as pleasant and cooperative. She also denied suicidal and homicidal ideation. (Exhibits 1F and 13F).
>
> Medical records from Ohio Psych Associates, dated September 2013 through November 2014, demonstrate the claimant endorsed irritability, anxiety, a lack of motivation, feeling overwhelmed, and feeling tired. She also endorsed some visual and auditory hallucinations in May 2014. Her examinations showed she was cooperative, alert and oriented, with good eye contact, no agitation, a "stressed" mood, a "restricted" affect, goal directed thought process, and intact attention and concentration. By November 2014, the claimant reported she had no manic symptoms, her anxiety was controlled, and her energy had been fair. Her examination at this appointment was normal. (Exhibit 6F).
>
> Progress notes from Ohio Psych Associates, dated January 2015 through April 2015, reflect that the claimant complained of some irritability, anxiety, sleep disturbance, and OCD tendencies. She denied hallucinations, delusions, and manic symptoms. Her mental status exams were normal, except for some irritable and depressed mood and restricted affect. (Exhibit 19F).
>
> The claimant began to receive counseling from Timothy Ickes, PA-C at Family Behavioral Health Services in July 2016. Her examinations from July 2016 through January 2017 showed she was fully alert and easily engaged. She had a full and congruent affect with normal attention and concentration. She appeared neither depressed nor anxious. Her memory, insight, and judgment were intact, she had a calm and pleasant demeanor, she laughed easily and appropriately, and her eye contact was good. (Exhibit 28F).

(Tr. 403–04).

C.   **The ALJ's Decision**

The ALJ found that Plaintiff had not engaged in substantial gainful employment since

4

September 18, 2014, the date of her application. (Tr. 401). The ALJ determined that Plaintiff suffered from the following severe impairments: degenerative disc disease of the lumbar spine; bipolar disorder; and obsessive-compulsive disorder ("OCD"). (*Id.*). The ALJ also concluded that Plaintiff's panic disorder with agoraphobia, mood disorder, psychotic disorder, anxiety and post-traumatic stress disorder ("PTSD") are not medically determinable impairments because "these diagnoses were not offered by acceptable medical sources, which is required to establish that the claimant has a medically determinable impairment." (Tr. 402).

The ALJ then concluded that none of Plaintiff's impairments, either singly or in combination, met or medically equaled a listed impairment. (*Id.*).

As to Plaintiff's RFC, the ALJ opined:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except the claimant can stand and/or walk for 4 hours in an 8-hour workday. She can occasionally operate foot controls with the right lower extremity, climb ramps and stairs, stoop, kneel, crouch, and crawl. The claimant can frequently balance. She can also perform work that does not involve climbing ladders, ropes or scaffolds or work around hazards (such as unprotected heights and exposure to moving mechanical parts). Mentally, the claimant can perform simple and moderately complex tasks. She can interact occasionally with others in person, but can have unlimited interactions with others on the telephone.

(Tr. 404–05).

After consideration of the evidence, however, the ALJ found that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of [her] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." (Tr. 405).

The ALJ concluded that Plaintiff has mild limitations in understanding, remembering, or applying information (though he noted that he "limited the complexity of tasks to reduce the stress of work considering her moderate deficit in concentration, persistence or pace"). (Tr. 404). The ALJ then concluded that Plaintiff has moderate limitations in her ability to interact with others,

concentrate, persist, or maintain pace. (*Id.*). And, as for adapting or managing herself, the ALJ found that Plaintiff has no limitations. (*Id.*).

Turning to the opinion evidence relevant in this case, the ALJ assigned "partial weight" to the opinions of the state agency psychological consultants. (Tr. 408). state agency reviewing psychologist, Paul Tangeman, Ph.D., opined that Plaintiff was capable of flexible time and production demands, of occasional and superficial social exchanges, and of working in a static environment with infrequent changes. (Tr. 463–64). At the reconsideration level, Dr. Bruce Goldsmith, Ph.D., opined that Plaintiff is capable of carrying out single to multiple step tasks that allow for flexible time and production demands, of occasional and superficial social exchanges, and of working in a static work environment with infrequent changes. (Tr. 478–79). The ALJ explained how he reached his decision to afford these opinions "partial weight":

> I find the claimant is less limited than these consultants given, in part, to the medical records from Timothy Ickes, which noted the claimant was no longer over-medicated. He also described her as fully alert and easily engaged. She had a full and congruent affect with normal attention and concentration. She appeared neither depressed nor anxious. Her memory, insight and judgment were intact, she had a calm and pleasant demeanor, she laughed easily and appropriately, and her eye contact was good.

(Tr. 408).

Finally, the ALJ considered Plaintiff's daily activities:

> The claimant has reported she cleans all the time (Exhibit 12F). During an assessment at Six County in April 2015, the claimant reported she was currently in a new relationship with someone she had met online (Exhibit 20F, p. 1). In May 2015, the claimant reported she had been taking care of her cousin's or friend's three children (Exhibit 20F, p. 6–7). While the claimant denied this at the hearing, it is hard to believe this was not discussed at the appointment, given that the rest of the progress note pertains to the claimant and the notation is quite specific. She had the care of her own children at times (19f/4, 28F/1, 5, 7). The claimant has also been able to attend softball tournaments, soccer games, and senior night, and takes drives to relax. These types of activities are commensurate with the claimant's residual functional capacity.

6

(Tr. 409).

## II. STANDARD OF REVIEW

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). The Commissioner's findings of fact must also be based upon the record as a whole. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985). To this end, the Court must "take into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision. *Rhodes v. Comm'r of Soc. Sec.*, No. 2:13-cv-1147, 2015 WL 4881574, at *2 (S.D. Ohio Aug. 17, 2015).

## III. DISCUSSION

Plaintiff raises three errors to the Court. (Doc. 11). At base, Plaintiff argues that the ALJ's decision should be reversed because the ALJ improperly evaluated the mental health evidence of record. Plaintiff's argument is essentially a "domino effect" theory broken into three sub-parts. First, Plaintiff argues that the ALJ incorrectly deemed Plaintiff's psychological impairments as not medically determinable impairments. Second, Plaintiff argues that because the ALJ improperly found non-medically determinable impairments, she improperly weighed the opinions provided by the state agency psychologists. Lastly, Plaintiff argues that all of these errors resulted in a flawed mental residual functional capacity.

Before addressing each argument in turn, it is important first to stress that the ALJ

7

concluded that Plaintiff has two severe mental health impairments—bipolar disorder and OCD. (Tr. 401). Therefore, while the ALJ concluded that not all of Plaintiff's mental health impairments were medically determinable impairments, the ALJ engaged in a thorough analysis of Plaintiff's mental health records, found she had two severe mental health conditions, and fashioned an RFC tailored to her mental health needs and abilities.

### A. The ALJ's Step Two Determination

First, Plaintiff argues that the ALJ erred in concluding that her alleged panic disorder with agoraphobia, mood disorder, psychotic disorder, anxiety, and PTSD were not medically determinable impairments. Plaintiff claims that the record undermines the ALJ's conclusion and argues that the ALJ's step two determination resulted in other critical errors. (*See generally* Doc. 11).

At step two, the ALJ is required to consider whether Plaintiff's alleged impairments constitute "medically determinable" impairments. *See* 20 C.F.R. § 404.1508; 20 C.F.R. § 416.920(a)(4)(ii); 20 C.F.R. § 404.1520(a)(4)(ii). A medically determinable impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques," and "must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms." 20 C.F.R. § 404.1508; 20 C.F.R. § 416.908. Only evidence from acceptable medical sources can establish a medically determinable impairment. 20 C.F.R. § 404.1513(a) ("We need evidence from acceptable medical sources to establish whether you have medically determinable impairment(s)"). Additionally, an impairment must meet the durational requirement, meaning, "it must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. § 404.1509. And, relevant here, "[i]f an alleged impairment is not

8

medically determinable, an ALJ need not consider that impairment in assessing the RFC." *See Jones v. Comm'r of Soc. Sec.*, No. 3:15-CV-00428, 2017 WL 540923, at *6 (S.D. Ohio Feb. 10, 2017) (citing *Rouse v. Comm'r of Soc. Sec.*, No. 2:16-CV-0223, 2017 WL 163384, at *4 (S.D. Ohio Jan. 17, 2017) (stating that a "claimed condition which is not 'medically determinable' need not be considered at all" in determining a claimant's RFC); 20 C.F.R § 404.1527(a)(1); 20 CFR § 404.1545(a)(2)).

Plaintiff, relying on several pieces of evidence in the record, maintains that her diagnoses of panic disorder with agoraphobia, mood disorder, psychotic disorder, anxiety, and PTSD have been identified by acceptable medical sources. First, she states that her depression and anxiety have been "well-documented by various medical providers." (*Id*. at 9 (citing Tr. 917, 1048, 1098, 1120)). Second, she alleges that Mr. Ickes, a physician's assistant, "repeatedly diagnosed" her mental health conditions. (*Id*. (citing Tr. 1087–91)). Third, Plaintiff states that the record contains "other references to PTSD." (*Id*. (citing Tr. 917, 1049, 1120)). Finally, Plaintiff contends that the record contains "numerous diagnoses and references to [her] psychotic disorder." (*Id*. (citing Tr. 654, 675, 773, 778, 918, 921, 924)). Having reviewed Plaintiff's supporting evidence, the Court finds that the ALJ properly classified Plaintiff's diagnoses of panic disorder with agoraphobia, mood disorder, psychotic disorder, anxiety, and PTSD as non-medically determinable impairments.

To start, Plaintiff relies heavily on numerous treatment notes, all of which include a section titled, "past medical history," and listing, among others, depression, PTSD, and/or OCD as previously diagnosed conditions. However, a record from a doctor's appointment containing merely a list of previous diagnoses does not amount to an "anatomical, physiological, or psychological abnormalit[y] which can be shown by medically acceptable clinical and laboratory

diagnostic techniques," nor do these records show that it was "established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms." 20 C.F.R. § 404.1508; 20 C.F.R. § 416.908.

For example, Plaintiff relies on treatment notes from a January 19, 2015 visit, wherein Plaintiff's "past medical history" diagnoses include, among others, PTSD and depression. (Tr. 917). However, the actual diagnoses from that visit were bipolar disorder, mixed with psychotic features and OCD, both of which the ALJ considered to be severe impairments. (*Id.*). (*See also* Tr. 1048–49 (treatment notes pertaining to Plaintiff's dizziness and chest pain and listing, under "past history," depression and PTSD); 1098 (treatment notes from Plaintiff's ER visit for a puncture wound and listing, under "past history," depression and PTSD); 1120 (treatment notes regarding Plaintiff's complaints of neck pain and noting depression under "past medical history")). These records do not establish medically determinable impairments. Indeed, "[d]isability is determined by the functional limitations a condition imposes, not the mere diagnosis of a condition." *Denham v. Comm'r of Soc. Sec.*, No. 1:14-cv-611, 2015 WL 5471435, at *11 (S.D. Ohio Sept. 18, 2015) (citation omitted).

Further, the Court is not persuaded by Plaintiff's argument that the physician's assistant, Mr. Ickes "repeatedly diagnosed" her mental health conditions. As the Commissioner correctly notes, Mr. Ickes is not an acceptable medical source, and, as such, the ALJ was not permitted to find medically determinable impairments based solely upon Mr. Ickes' opinions. Therefore, Mr. Ickes' "diagnosis" of PTSD is not enough. *See Stephenson v. Comm'r of Soc. Sec.*, No. 1:13-cv-397, 2015 WL 7871353, at *5 (S.D. Ohio Dec. 4, 2015) (noting that because the licensed social worker was "not an 'acceptable medical source,' the diagnosis he made does not constitute evidence of a 'medically determinable impairment.'").

Moreover, apart from the fact that Mr. Ickes is not an acceptable medical source, the Court finds that his treatment notes are not enough to support a finding of medically determinable impairments. For example, Plaintiff relies on records from her July 1, 2016 appointment with Mr. Ickes. (Doc. 11 at 9 (citing Tr. 1087)). However, that appointment was only an initial evaluation, and besides, at that appointment, Mr. Ickes noted that Plaintiff "appear[ed] neither depressed nor anxious," had a "calm and pleasant demeanor," and "laugh[ed] easily and appropriate[ly]"). (Tr. 1087). (*See also* Tr. 1089 (Mr. Ickes noting that Plaintiff "appear[ed] neither depressed or anxious"); 1091(same)). Accordingly, Plaintiff has failed to cite objective medical evidence from an acceptable medical source that is sufficient to establish medically determinable impairments.

In sum, the ALJ reasonably concluded that Plaintiff's alleged panic disorder with agoraphobia, mood disorder, psychotic disorder, anxiety, and PTSD were not medically determinable impairments.

**B.    Opinion Evidence**

Plaintiff next contends that the ALJ's failure to classify several of her mental health impairments as medically determinable impairments caused the ALJ to err when evaluating the state agency psychologists. (*See* Doc. 11 at 10–13). The ALJ assigned the state agency psychologists' opinions "partial weight," explaining that Plaintiff is "less limited" than the consultants opined. (Tr. 408). The ALJ elaborated as to how she reached her finding:

> I find the claimant is less limited than these consultants given, in part, to the medical records from Timothy Ickes, which noted the claimant was no longer over-medicated. He also described her as fully alert and easily engaged. She had a full and congruent affect with normal attention and concentration. She appeared neither depressed nor anxious. Her memory, insight, and judgment were intact, she had a calm and pleasant demeanor, she laughed easily and appropriately, and her eye contact was good."

(*Id*.).

Plaintiff theorizes that "[h]ad the ALJ properly classified all of Ms. Bryan's medically

determinable mental health impairments, then the ALJ's evaluation of the only mental health opinion of record may have been different." (Doc. 11 at 10). Plaintiff also argues that the ALJ erred in evaluating the state agency opinions because objective medical evidence supports their opinions. (*Id*. at 12–13). The Court finds several flaws with Plaintiff's arguments.

First, as established above, the ALJ did not err in classifying several of Plaintiff's mental health conditions as non-medically determinable impairments. Therefore, to the extent Plaintiff's second stated error turns on the outcome of her first stated error, Plaintiff's argument fails.

Second, the Court is not persuaded by Plaintiff's argument that the ALJ erred in comparing the state agency opinions with those of Timothy Ickes, rather than with the record as a whole. (*See* Doc. 11 at 12). While Plaintiff is correct that the ALJ explicitly compared the state consultants' opinions with those of Timothy Ickes, the Court finds that the ALJ properly evaluated the opinion evidence. Notably, the ALJ stated that she found Plaintiff less limited than the consultants "*in part*" because of Timothy Ickes' records. (Tr. 408) (emphasis added)). Plaintiff demands more than the Regulations require. There is no "reasons-giving" requirement with regard to non-treating sources. *See Martin v. Comm'r of Soc. Sec.*, 658 F. App'x 225, 259 (6th Cir. 2016), *reh'g denied* (Sept. 20, 2016). While certainly required to develop the record fully, "an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered." *Dykes ex rel. Brymer v. Barnh*art, 112 F. App'x 463, 467 (6th Cir. 2004).

Finally, Plaintiff's argument that objective medical evidence supports the state agency opinions likewise fails. Even if it is true that the record contains some evidence that may support Plaintiff's argument, the ALJ's findings are "not subject to reversal merely because substantial evidence exists in the record to support a different conclusion." *Mixon v. Colvin*, 12 F. Supp. 3d

1052, 1064 (S.D. Ohio 2013). Rather, it is the ALJ's "function to resolve conflicts in the evidence, *see Hardaway v. Sec'y of H.H.S.*, 823 F.2d 922, 928 (6th Cir.1987)," and that is exactly what the ALJ did here.

**C. The ALJ's RFC Finding**

Finally, Plaintiff argues that "[t]he ALJ's incorrect classification of her mental health impairments had a domino affect [sic] on [her] claim." (Doc. 11 at 14).

A plaintiff's RFC "is defined as the most a [plaintiff] can still do despite the physical and mental limitations resulting from her impairments." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009); *see also* 20 C.F.R. §§ 404.1545(a), 416.945(a). The Social Security regulations, rulings, and Sixth Circuit precedent provide that the ALJ is charged with the final responsibility in determining a claimant's residual functional capacity. *See, e.g.*, 20 C.F.R. § 404.1527(d)(2) (the final responsibility for deciding the residual functional capacity "is reserved to the Commissioner"). And it is the ALJ who resolves conflicts in the medical evidence. *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984). In doing so, the ALJ is charged with evaluating several factors when determining the RFC, including the medical evidence (not limited to medical opinion testimony), and the claimant's testimony. *Henderson v. Comm'r of Soc. Sec.*, No. 1:08-cv-2080, 2010 WL 750222, at *2 (N.D. Ohio Mar. 2, 2010) (citing *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004)). Relevant here, "[i]f an alleged impairment is not medically determinable, an ALJ need not consider that impairment in assessing the RFC." *See Jones*, 2017 WL 540923, at *6 (citing *Rouse*, 2017 WL 163384, at *4 (stating that a "claimed condition which is not 'medically determinable' need not be considered at all" in determining a claimant's RFC); 20 C.F.R § 404.1527(a)(1); 20 CFR § 404.1545(a)(2)).

Accordingly, because the Court finds that the ALJ did not err in finding that several of

13

Plaintiff's mental health impairments were not medically determinable impairments, the ALJ was not required to consider these impairments when fashioning the RFC. Put simply, Plaintiff's "domino effect" argument fails. While Plaintiff relies on evidence listing her mental health diagnoses, she has failed "to present[] evidence to show that the clinical findings and diagnoses [she] has listed imposed additional functional limitations that the ALJ failed to take into account in formulating the [ ] RFC." *Denham*, 2015 WL 5471435, at *11. Indeed, "Plaintiff's mere recitation of clinical findings and diagnoses is meaningless absent evidence showing that the findings and diagnoses impose any such limitations." *Id*. As such, the ALJ did not err in her formulation of the RFC.

## IV. CONCLUSION

Based on the foregoing, it is **RECOMMENDED** that Plaintiff's Statement of Errors (Doc. 11) be **OVERRULED** and that judgment be entered in favor of Defendant.

## V. PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed finding or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a de novo determination of those portions of the Report or specific proposed findings or recommendations to which objection is made. Upon proper objection, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

IT IS SO ORDERED.


Date: May 8, 2019                                          /s/ Kimberly A. Jolson
                                                           KIMBERLY A. JOLSON
                                                           UNITED STATES MAGISTRATE JUDGE